UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN KYU KIM, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | No. 17 C 1300 |
| | ) | |
| THE KOREAN NEWS OF CHICAGO, INC., | ) | Judge Thomas M. Durkin |
| ANDREW HUH, SOOK Y. KIM, AND | ) | |
| ROBERT B. KIM, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**MEMORANDUM OPINION & ORDER**

In-Kyu Kim ("Plaintiff") alleges to have begun his career in journalism forty years ago in Korea. R. 1 ¶ 51. He came to the United States in 2000 as the chief editor of The Korea Times. *Id.* ¶ 52. He worked for various Korean publications in the United States over the next several years. *Id.* ¶¶ 53-54. During a stint in Chicago with The Korea Times from 2006-2008, Plaintiff met Defendant Robert Kim, a local travel agent. *Id.* ¶ 55. Mr. Kim mentioned his interest to Plaintiff in purchasing the Chicago Branch of The Korea Times, which, at the time, was listed for sale at $2,000,000. *Id.* ¶ 56.

In the beginning of April 2014, the CEO of The Korea Times offered to sell the Chicago Branch to Plaintiff at the deeply discounted price of $500,000. *Id.* ¶ 57. This offer was made to Plaintiff exclusively, in light of his longstanding relationship with the publication. *Id.* Plaintiff did not have the funds to make the purchase, but he contacted Mr. Kim, who, along with fellow travel agent and co-defendant Andrew

Huh, put up the funds to make the purchase. *Id.* ¶¶ 58-61. Negotiating the terms of the sale was allegedly contentious, and Plaintiff claims to have worked eight to ten hours weekly over a period of several months as a go-between between the buying and selling parties. *Id.* ¶ 60. Plaintiff alleges that Mr. Kim and Mr. Huh verbally agreed that in recognition of Plaintiff having brought them the business opportunity and negotiating the terms of sale on their behalf, he would be given a 30% share of the corporation, with the remaining 70% to be split equally between Mr. Kim's wife, co-defendant Sook Kim, and Mr. Huh.[1] *Id.* ¶ 62. Plaintiff alleges that despite his successful consummation of the deal, that promise was never fulfilled, and he was never otherwise compensated for his efforts. *Id.* ¶¶ 10, 116.

Plaintiff further alleges that once the deal was done, Mr. Kim asked him to run the business of the paper, which Mr. Kim and Mr. Huh incorporated as The Korean News of Chicago, Inc. *Id.* ¶¶ 63-64. He alleges that Mr. Kim promised to pay him $2,000 per month for his work, to provide him with his own apartment and vehicle, and to raise Plaintiff's wages when the business stabilized. *Id.* ¶ 64. Relying on those promises, Plaintiff and his wife moved from New York to Chicago. *Id.* ¶ 65. When they arrived, they were not given their own apartment, but rather "a corner of Kim's living room to sleep" in. *Id.* ¶ 66. Plaintiff was given a vehicle, but it was registered to the company, not to him personally. *Id.* ¶ 68. Plaintiff alleges he worked long hours for the paper seven days a week from August 15, 2014 to February 4, 2015 at the direction and under the supervision of Mr. Kim and Mr.

---

[1] It is unclear from the allegations whether this promise was made before or after the deal was finalized.

Huh. *Id.* ¶¶ 11, 70. He was paid "a fixed amount per week regardless of the number of hours he worked in a day or the number of hours he worked in a workweek." *Id.* ¶ 12-14.

In October 2014, just a few months after the close of the sale, Mr. Kim instructed Plaintiff to look for a purchaser for the paper. *Id.* ¶ 71. He alleges he did so, though apparently without success. *Id.* In January 2015, Plaintiff received a letter from an attorney indicating that he and his wife were to leave the Kims' home. *Id.* In February 2015, Plaintiff received an email from Mr. Kim stating that his employment had been terminated by the company's board, on which Plaintiff alleges all three of the individual defendants held seats as officers. *Id.* ¶ 72.

Plaintiff has sued the Kims, Mr. Huh, and The Korean News of Chicago, Inc. under the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL"), alleging that the defendants failed to compensate him in accordance with federal and state overtime pay and minimum wage laws. *Id.* (Counts I-IV). He has also sued the defendants for breach of the oral agreement to make him a 30% owner of the company. *Id.* (Count V). The defendants move to dismiss arguing that by alleging that he was promised a 30% stake in the business and that he ran all of the newspaper's major operations, Plaintiff has pled himself out of court, because "business owners" who engage in "management activities" are among the "bona fide executives" exempt from FLSA's minimum and overtime wage requirements. R. 14 at 3-4. The defendants also seek the dismissal of Mrs. Kim from the labor claims on the basis that Plaintiff has failed to allege that she is an "employer" within the

meaning of FLSA. *Id.* at 5-6. Finally, the defendants argue that Plaintiff has failed to allege sufficient detail to support his breach of contract claim against Mrs. Kim and Mr. Huh. *Id.* at 7-8. The Court addresses each argument in turn.

1. <u>Whether Plaintiff is exempt is a question for summary judgment</u>.

"The burden is on the employer to prove that an employee is exempt under FLSA . . . and such exemptions are to be narrowly construed against the employer seeking the exemption." *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 777 (N.D. Ill. 2015) (citing *Schmidt v. Eagle Waste & Recycling*, 599 F.3d 626, 631 (7th Cir. 2010)). "The application of an exemption under the FLSA is a matter of affirmative defense," and "[a] plaintiff need not plead around potential affirmative defenses." *Id.* (internal brackets omitted) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)); see also *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012) (citing *Corning Glass*). However, if Plaintiff pleads facts that irrefutably demonstrate that an exemption applies, dismissal on the pleadings may be appropriate. *See id.*

The "business owner" exemption applies to "any employee who owns at least a bona fide 20–percent equity interest in the enterprise in which the employee is employed . . . and who is actively engaged in its management." 29 C.F.R. § 541.101. Plaintiff has not pled himself out of court by alleging that he was promised but not given 30% ownership of the company. Indeed, Plaintiff expressly alleges that while he should have been a 30% owner, he was not (on account of the defendants' breach of contract). Unless the defendants come forward with affirmative evidence

4

establishing that Plaintiff was actually part-owner, the facts as alleged actually preclude application of the business owner exemption. Moreover, ownership is not the whole of the requirement for the exemption to apply. Rather, to be exempt, an employee must have a bona fide equity interest "*and [be] actively engaged in [the company's] management.*" 29 C.F.R. § 541.101 (emphasis added). "Management" is defined by the regulations as including, but not being limited to, activities such as:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. Clearly, deciding whether Plaintiff actively engaged in the management of the company is a complicated issue of fact to be decided by reference to an array of factors not yet developed in the record. Contrary to the defendants' arguments, Plaintiff has not made admissions such that the exemption irrefutably applies simply by alleging that he worked as a publisher and attempted to find a buyer for the company. Questions remain as to both prongs of the "business owner" exemption. It is therefore not appropriate to resolve the issue at this stage in the proceedings.

5

2. <u>The complaint plausibly alleges that Mrs. Kim was an employer.</u>

The defendants cite to two cases which consider, based on affidavits and other evidence at summary judgment, whether certain individuals met the definition of employer set forth in the FLSA. See R. 14 at 5 (citing *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778 (N.D. Ill. 2011) (denying summary judgment for Plaintiff where a question of fact remained as to whether either or both of the defendants were employers within the meaning of the FLSA); *Alvarez v. Downtown Food Enterprises, Inc.*, 2010 WL 5158122, at *1 (N.D. Ill. Dec. 13, 2010) (granting summary judgment where the defendant's affidavit regarding her lack of authority over the plaintiffs' employment was apparently uncontested); *see also* R. 19 at 4 (relying on the "ample precedent" cited in their opening brief).

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The FLSA contemplates several simultaneous employers who may be responsible for compliance with the FLSA." *Villareal*, 776 F. Supp. 2d at 784 (citing *Falk v. Brennan*, 414 U.S. 190, 191 (1973)). Courts have held that a determination of whether an individual is liable under the FLSA "must focus upon the totality of the circumstances, underscoring the economic reality of the employment relationship." *Id.* at 785 (citation omitted). Whether an individual is liable as an employer "depends not upon whether the individual controlled every aspect of the employees' conduct, but upon whether the individual had control over the alleged FLSA violation." *Id.* (citation omitted).

6

The conduct comprising the alleged violation here is the failure to pay Plaintiff minimum and overtime wages. Thus, to allege that Mrs. Kim is an employer, the complaint must set forth factual content supporting the reasonable inference that she exercised control over Plaintiff's compensation. See *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013); see also *Deschepper*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015). Plaintiff alleges that Mrs. Kim, like the other individual defendants, was an owner and officer of the Korean News of Chicago. R. 1 ¶¶ 21, 23. He alleges that in that capacity, she "exercised authority over the terms and conditions of plaintiff's employment and how much and the manner in which plaintiff was paid." Id. ¶¶ 25-26. These somewhat formulaic allegations are bolstered by the fact that Mrs. Kim is alleged to have hosted Plaintiff in her home when he moved with his wife from New York to Chicago. *Id.* ¶¶ 65-67. A reasonable inference is that in doing so, she was aware of and participated in arranging particulars of Plaintiff's relocation for the job with the newspaper, including the terms of his housing, transportation and compensation. While the complaint alleges that only Mr. Kim and Mr. Huh managed Plaintiff's day-to-day work activities, *id.* at ¶¶ 22, 24, no such allegation against Mrs. Kim is required to keep her in the case as an employer at this early stage. It suffices that she is alleged to have had authority over Plaintiff's compensation, and to have exercised that authority in violation of her obligations under the FLSA.

It may be that discovery will show that Mrs. Kim played no role in setting Plaintiff's compensation. But because Plaintiff has alleged facts permitting the

7

Court to draw the reasonable inference that she did, Plaintiff is entitled to pursue discovery on his claim.

3. <u>The complaint plausibly alleges a breach of contract against Mrs. Kim and Mr. Huh</u>

"The required elements of a breach of contract claim in Illinois are the standard ones of common law: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by Plaintiff of all required conditions, (5) breach, and (6) damages." *Fittante v. Olsson*, 2013 WL 439125, at *2 (N.D. Ill. Feb. 5, 2013) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012)); *see also Radaviciute v. S & K Lim Cleaners, Inc.*, 2014 WL 1909924, at *4 (N.D. Ill. May 8, 2014) (citing *Lindy Lu LLC v. Ill. Cent. R.R. Co.*, 984 N.E.2d 1171, 1175 (Ill. App. Ct. 2013)). On a 12(b)(6) motion, the court must look at whether Plaintiff has given the defendant fair notice of a plausible claim against it. *Id.* citing (*Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

Read in the light most favorable to Plaintiff, *Mann*, 707 F.3d at 877, the complaint plausibly alleges that the Kims and Mr. Huh offered to make Plaintiff part-owner of The Korean News of Chicago as consideration for him bringing them the unique and economically attractive business opportunity and negotiating the terms of the deal on their behalf. The complaint plausibly alleges that Plaintiff accepted that offer, and worked diligently without pay to perform his end of the bargain. The complaint alleges that Plaintiff was not made an owner of the company as incorporated by the Kims and Mr. Huh and that, as a consequence, he was damaged. All six common law elements have been pled. See *Fittante*, 2013 WL

8

439125, at *2 (finding allegations of an oral contract sufficient, "if just barely," where they described the parties' "mutual obligations," "clear enough" terms of the deal, Plaintiff's performance of his obligations, conduct by the defendant constituting breach, and damages caused by that conduct).

The defendants point out that in one part of the complaint, Plaintiff alleges that Mr. Kim and Mr. Huh verbally agreed to give him a 33.3% interest in the company, but that later in the complaint, Plaintiff alleges that Mr. Kim asked him to reduce that percentage to 30% for accounting purposes. According to the defendants, this second conversation about ownership percentages constitutes a "second offer," in which Mr. Huh is alleged to have played no role. At this stage in the proceedings, this technicality will not derail Plaintiff's claim against Mr. Huh. The contract is alleged to have begun with a verbal offer to Plaintiff from Mr. Kim and Mr. Huh, and at all times is alleged to have contemplated a three-way split in ownership between the Kims, Mr. Huh and Plaintiff. Moreover, Mr. Kim and Mr. Huh are alleged to have jointly and equally financed the purchase of the company, directed Plaintiff's conduct in negotiating the terms of sale, and filed for incorporation upon consummation of the deal. Both are alleged to be officers of the company and to manage its corporate affairs. These facts make Plaintiff's allegation that they jointly offered to make him a part-owner plausible, even if that offer was allegedly communicated to Plaintiff by Mr. Kim alone. The allegations also support the inference that both individuals may have played a role in the alleged breach. At

9

this stage in the proceedings, that is sufficient for the claim to proceed to discovery against them jointly.

As for Mrs. Kim, the complaint alleges that her husband made the offer to Plaintiff and that she was to be a direct party to the agreement as a part-owner of the newspaper. While evidence confirming these allegations alone may not be sufficient to prove that Mrs. Kim was bound by the agreement, the allegations are nevertheless sufficient to state a claim for breach of contract against her. There are circumstances under which a husband can bind his wife to a contract, if, for example they are acting in concert in pursuit of a common or joint business enterprise, see *Arwell Div. of Orkin Exterminating Co. v. Kendrick*, 267 N.E.2d 352, 354 (Ill. App. Ct. 1971), or if a husband is acting as his wife's agent, see *Elmore v. Blume*, 334 N.E.2d 431, 434 (1975). A husband may also bind his wife to a contract to which she was not initially party if she later ratifies (or fails to affirmatively repudiate) the agreement by act or conduct. See *Effingham State Bank v. Blades*, 487 N.E.2d 431, 434-35 (1985). Whether Mr. Kim was acting as an agent for his wife when he extended the offer to Plaintiff, or whether Mrs. Kim ratified the agreement by approving it in her role as an owner, director and officer of the The Korean Newspaper of Chicago remains to be seen. Since, for the reasons set forth above, both scenarios are plausible based on the allegations in the complaint, Mrs. Kim, too, remains in the case as to Count V.

## Conclusion

For the foregoing reasons, the motion to dismiss is denied.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: July 14, 2017

11