IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN-KYU KIM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17-cv-01300 |
| v. ) | |
| ) | District Judge Hon. Thomas M. Durkin |
| THE KOREAN NEWS OF CHICAGO ) | |
| INC., an Illinois Corporation, ANDREW ) | |
| HUH, individually, SOOK Y. KIM, ) | |
| individually, and ROBERT B. KIM, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT ANDREW HUH'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant, ANDREW HUH ("Huh" or "Defendant"), through his undersigned attorneys, submits his Memorandum of Law in Support of His Motion for Summary Judgment. In addition, much of the arguments addressed in the other Defendants' summary judgment motions are equally applicable to Andrew Huh to defeat Plaintiff's claims against him. Andrew Huh hereby adopts and incorporates all of the arguments in the other Defendants' summary judgment motions.

**I.      INTRODUCTION**

Plaintiff filed a five count complaint against several Defendants, including Huh, asserting claims under the Fair Labor Standards Act ("FLSA") (Counts I and II), Illinois Minimum Wage Law ("IMWL") (Counts III and IV), and breach of contract (Count V). Plaintiff asserts two distinct theories of liability for his FLSA and IMWL claims. First, he alleged that he was an employee of Huh from April 10, 2014, to August 14, 2014, but was neither paid minimum wage nor overtime by Huh. Second, he seeks to hold Huh liable under the FLSA and IMWL for his

role as an officer and shareholder of Defendant Korean News of Chicago, Inc. ("KNCI"), where Plaintiff was employed as its President from August 15, 2014 to February 4, 2015. In addition, Plaintiff claims that Huh breached an oral contract with him that would have given him 30% of the shares of KNCI. As set forth below, Plaintiff offers nothing beyond his own implausible conclusions and speculations, and even directly contradicts the allegations of his complaint. Therefore, because there is no genuine issue of material facts as to any of Plaintiff's claims against Huh and he is entitled to judgment as a matter of law, the Court should enter summary judgment for Huh as to all of Plaintiff's claims against him.

## II.     BACKGROUND AND STATEMENT OF FACTS

In his complaint, Plaintiff alleged that from April 10, 2014, until August 14, 2014, Plaintiff regularly and customarily at the specific instructions and demand of Huh actually performed work for him, as well as the other Defendants. (Dkt. 1, Complaint at ¶¶ 9, 75.) Plaintiff also claimed that between August 15, 2014 to February 4, 2015, he performed work for KNCI in excess of forty hours per week, but was not paid minimum wage or overtime. (Dkt. 1, Complaint at ¶¶ 11, 75, 76.) In order to hold Huh individually, jointly and severally liable under the FLSA and the IMWL when Plaintiff was the President of KNCI, Plaintiff claims that Huh was an "employer" under the relevant laws. (Dkt. 1, Complaint at ¶ 35.) Further, Plaintiff claims that Huh breached a purported oral contract with him that would have entitled him to 30% of the shares of KNCI and that he suffered damages as a result of his purported breach. (Dkt. 1, Complaint at ¶¶ 116-17.)

Despite the allegations of his complaint against Huh, Plaintiff now completely contradicts his claims against Huh. He testified that between April 10, 2014 to August 14, 2014, he did not have: (i) any kind of employment agreement with Huh (LR 56.1 Facts at ¶ 4); or (ii) any

2

conversations with Huh (LR 56.1 Facts at ¶ 5). Further, Plaintiff confirmed that he had no communication of any kind, be it telephone, email or letter, that related to the purchase of Korea Times Chicago. (LR 56.1 Facts at ¶ 6.)

KNCI purchased the Korea Times Chicago newspaper on August 15, 2014 and began operating the newspaper on that date. (LR 56.1 Facts at ¶ 7.) On August 15, 2014, Plaintiff moved to Chicago with his wife from New York to work for KNCI as its President. (Dkt. 1, Complaint at ¶ 65; LR 56.1 Facts at ¶¶ 9-10.) Plaintiff was the head of, and in charge of, the newspaper editing and publication department and was responsible for the day-to-day operations of KNCI. (LR 56.1 Facts at ¶ 10.) In his role and during the entirety of his employment with KNCI, Plaintiff always managed and supervised the work of at a minimum 2 or more employees. (LR 56.1 Facts at ¶ 11.) In fact, every person in the editing and publication department, which numbered around 10 employees, was managed and supervised by Plaintiff. (LR 56.1 Facts at ¶ 11.)

With respect to his employment as President of KNCI from August 15, 2014 to February 4, 2015, Plaintiff testified that Huh was not Plaintiff's manager, was not his supervisor, did not have the ability to manage Plaintiff's work, did not have authority over Plaintiff's newspaper editorial work product, did not set Plaintiff's work hours, and did not fire Plaintiff. (LR 56.1 Facts at ¶ 12, 14, 15, 16, 17). He further testified that he never informed Huh that he was not paid wages properly (LR 56.1 Facts at ¶ 18).

At no time during the relevant time period did Huh hire anyone to personally work for him as an employee. As such, he never employed 4 or more employees. (LR 56.1 Facts at ¶ 19.) At no time during the relevant time period did Huh engage in any personal business that took place on an interstate basis. (LR 56.1 Facts at ¶ 20.)

### III. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *see also Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 458 (7th Cir. 1999). A plaintiff opposing summary judgment must present admissible evidence showing a genuine issue of material fact; a scintilla of evidence, or evidence that is not significantly probative, is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A plaintiff "cannot rest on [her] own deposition, or self-serving affidavits, to meet [her] burden of proof," *Gilmour v. Abbott Labs.*, No. 03-C-9076, 2005 WL 947082, at *6 (N.D. Ill. Apr. 11, 2005).

### IV. ARGUMENT

**A. Plaintiff's FLSA Claim Fails Because He Cannot Prove that Huh is Subject to the FLSA and He did not have an Employment Agreement with Huh from April 10, 2014, to August 14, 2014.**

The FLSA requires employers pay their employees a minimum hourly wage, 29 U.S.C. § 206(a), and one and one-half times their hourly wage for every hour worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An "employee" is defined generically as "an individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines "employed" to include "to suffer or permit to work." 29 U.S.C. § 203(g).

As an initial matter, Plaintiff's FLSA claim against Huh does not fall within the scope of that law. In order to be subject to the FLSA's minimum wage and overtime compensation

4

requirements, Huh must be "engaged in commerce or in the production of goods for commerce, or is an enterprise engaged in commerce or in the production of goods for commerce …" 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). The FLSA defines "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose...." 29 U.S.C. § 203(r)(1). An enterprise is "engaged in commerce" if it (1) "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that has been moved in or produced for commerce by any person" and (2) realizes an "annual gross volume of sales made or business done" of at least $500,000. 29 U.S.C. § 203(s)(1)(A).

Simply put, the FLSA does not apply to Huh. He is an individual who did not engage in any interstate commerce and he is not an enterprise as that term is defined under the FLSA. (*See* LR 56.1 Facts at ¶ 20.) Plaintiff offers absolutely no evidence to support his claim that Huh is subject to the FLSA.

Even if Plaintiff can somehow muster evidence to show that Huh engaged in interstate commerce and hired employees to personally perform work for him, which he denies, there was no employment relationship between Huh and Plaintiff. The FLSA defines "employ" to mean "suffer or permit to work." 29 U.S.C. § 203(g). In *Jaworski v. Master Hand Contractors, Inc.*, the court noted that "When deciding whether individuals are 'employees' under the FLSA, courts inquire whether the individuals 'as a matter of economic reality are dependent upon the business to which they render service." No. 09-cv-7255, 2013 WL 1283534, *2-3 (N.D. Ill. Mar. 27, 2013) *citing Labor v. Laurtizen,* 835 F.2d 1529, 1534 (7th Circ. 1987). Courts look to the totality of

5

circumstances including a six part test. The court in *Brown v. Club Assist Road Service U.S., Inc.*, No. 12-cv-5710, 2013 WL 5304100, *5 (N.D. Ill. Sept. 19, 2013), found that whether a worker is an employee under the FLSA is a legal question.

Here, Huh did not employ Plaintiff from April 10, 2014, until August 14, 2014. (LR 56.1 Facts at ¶ 4.) Indeed, Plaintiff even admitted that between April 10, 2014 to August 14, 2014, he did not have: (i) any kind of employment agreement with Huh (LR 56.1 Facts at ¶ 4); or (ii) any conversations with Huh (LR 56.1 Facts at ¶ 5). Further, Plaintiff confirmed that he had no communication of any kind, be it telephone, email or letter, that related to the purchase of Korea Times Chicago. (LR 56.1 Facts at ¶ 6.) Huh confirms each and every one of these admissions by Plaintiff. As such, by Plaintiff's very admission there simply is no dispute that there was no employment relationship between Plaintiff and Huh.

Therefore, because the FLSA does not apply to Huh and Plaintiff had no employment relationship with him, Huh is entitled to summary judgment as to Counts I and II of the complaint as to that portion of Plaintiff's claim that he was a personal employee of Huh from April 10, 2014 to August 14, 2014.

**B.     Plaintiff's IMWL Claim Fails Because He Cannot Prove that Huh is Subject to the IMWL and He did not have an Employment Agreement with Huh from April 10, 2014, to August 14, 2014.**

The IMWL defines "employer" to include any individual, but also defines "employee" to include any "individual permitted to work by an employer in an occupation … but does not include any individual permitted to work … for an employer employing fewer than 4 employees …" 820 ILCS 105/3(c), (d)(1); *Jaworski*, 2013 WL 1283534, *7.

6

Here, Huh did not employ anyone from April 10, 2014 to August 14, 2014, let alone Plaintiff. (LR 56.1 Facts at ¶ 19.) As such, the IMWL does not apply to Plaintiff because Huh did not employ 4 or more employees.

Further, even if the IMWL applies to Huh and Plaintiff, which he denies, because Plaintiff was not Huh's employee under the FLSA, he is also not an employee under the IMWL. The IMWL parallels the FLSA and the same analysis generally applies to both statutes. *See Morgan v. SpeakEasy, LLC,* 625 F. Supp. 2d 632, 650 (N.D. Ill. 2007). In fact, the Illinois Administrative Code specifically states that interpretations of the FLSA should provide guidance to parties interpreting the IMWL, and it sets forth a six factor test for determining employee status that essentially parallels the FLSA test. Ill. Admin. Code, Tit. 56, §§ 210.110, 210.120. Because Plaintiff fails to establish that he is an employee under the FLSA, he also fails to show that he is an employee under the IMWL.

Therefore, because the IMWL does not apply to Huh and Plaintiff had no employment relationship with him, Huh is entitled to summary judgment as to Counts III and IV of the complaint as to that portion of Plaintiff's claim that he was a personal employee of Huh from April 10, 2014 to August 14, 2014.

**C.    Plaintiff's FLSA and IMWL Claims Asserting Individual Liability Against Huh when Plaintiff was the President of KNCI from August 15, 2014 to February 4, 2015 Fails as a Matter of Law.**

As part of his FLSA and IMWL claims, Plaintiff also seeks to hold Huh individually, jointly, and severally liable for his overtime and minimum wage claims against KNCI when he was the President of KNCI from August 15, 2014 to February 4, 2015. Plaintiff claims that Huh meets the definition of "employer" under the individual liability theory of the FLSA and IMWL

7

because of his status as an officer and shareholder of KNCI. (*See* Dkt. 1, Pl.'s Complaint at ¶¶ 35, 97.)

Under the FLSA, an "employer" includes "any person acting directly or indirectly in the interests of an employer in relation to an employee." 29 U.S.C. §203(d). The IMWL also similarly defines an "employer." Whether a person or entity is an "employer" under the FLSA is a question of law. *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 785 (N.D. Ill. 2011). "The analysis must focus upon the totality of the circumstances, underscoring the economic reality of the employment relationship. Courts have found that a determination of whether an individual is liable under the FLSA depends not upon whether the individual controlled every aspect of the employees' conduct, but upon whether the individual had control over the alleged FLSA violation." *Id.* at 785. (Internal citations omitted.) "This really is a question of duty: Based upon their control over decisions causing the violations of the [FLSA], which persons had a duty as a statutory employer not to violate the Act?" *Id., quoting Dole v. Simpson*, 784 F. Supp. 538 (S. D. Ind. 1991).

To determine whether an individual is an employer, courts consider the "economic reality" of the workplace, including whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Villareal,* 776 F. Supp.2d at 789. "The focus of the economic realities test is on the totality of the circumstances, rather than on traditional labels and roles, and, to that end, no single factor is dispositive." *Id.* at 789.

In *Alvarez v. Downtown Food Enterprises, Inc.*, 10-cv-4509, 2010WL5158122, (N.D. Ill. 2010), the court addressed whether an individual employee qualified as an "employer" under the

FLSA and the IMWL. The employee at issue, Zaimi, was the secretary and a minority shareholder of the defendant employer. *Id* at *1. During the first two months of the plaintiff's employment, Zaimi was a part-time employee, with no ability to hire or fire employees, to "cut checks," or keep records. With respect to this period, the court found that there was "no evidence that Zaimi oversaw the day-to-day operations of [the employer] or exerted any control over [plaintiff] during his employment …" *Id.* at 2. Further, the court found that mere stock ownership and officer status alone was insufficient to fall within the "employer" definition. *Id.* Therefore, the court held that Zaimi was not an "employer" and granted summary judgment in favor of Zaimi.

Similarly, in *Wilke v. Salamone*, 404 F. Supp. 2d 1040 (N.D. Ill. 2005), claims under the FLSA and the IMWL were asserted against the owner and president of the defendant employer in his individual capacity. Although the defendant was the owner and an officer of the company, the court found that he was not an "employer" under the relevant statutes as it was the company's site superintendents who had the authority to hire and fire employees and the defendant played no role in the decision to demand that the plaintiffs work "on their own time" or to subsequently terminate the employees. *Id.* at 1051. The court further found that the defendant's weekly visits to the work site, daily phone conversations with his office manager and stamped signature on the plaintiffs' final paychecks was not sufficient evidence of involvement in the terminations to defeat a summary judgment motion. *Id.*

At the outset, the other Defendants have filed summary judgment motions showing that as President of KNCI, Plaintiff was exempt from the overtime and minimum wage provisions of the FLSA and IMWL. As such, if this Court finds that Plaintiff was exempt from the overtime

9

and minimum wage provisions of the FLSA and IMWL during his employment as President of KNCI, then the Court must also enter summary judgment in Huh's favor.

Huh, however, has other defenses to Plaintiff's individual liability claim under Plaintiff's FLSA/IMWL claims. Plaintiff admitted that he was the president of KNCI and that Huh was not Plaintiff's manager, was not his supervisor, and did not have the ability to manage Plaintiff's work. (LR 56.1 Facts at ¶¶ 9, 12.) In addition, Plaintiff admitted that Huh did not have authority over Plaintiff's newspaper editorial work product at KNCI which was overseen by Plaintiff, did not set Plaintiff's work hours, did not supervise Plaintiff's work, and did not fire Plaintiff. (LR 56.1 Facts at ¶ 12, 14, 15, 16, 17.) Further, Plaintiff never informed Huh that he was not paid wages properly. (LR 56.1 Facts at ¶ 18.)

As such, Huh does not qualify as an "employer" under the FLSA and the IMWL and Huh, as a shareholder, does not entitle Plaintiff to hold him individually liable for his overtime and minimum wage claims against KNCI. Because Huh has none of the indicia of being an "employer" under either the FLSA or the IMWL, individual liability cannot be imposed on him, and he is entitled to summary judgment in his favor as to Counts I through IV of the complaint.

**IV.    Plaintiff's Oral Contract Claim Fails Because He Cannot Prove that He Entered into an Oral Contract with Huh for 30% of the Shares of KNCI.**

In Count V, Plaintiff claims that Huh breached an oral contract with him to give him 30% of the shares of KNCI. To state a claim for breach of an oral contract in Illinois, a plaintiff must establish: (1) an offer and acceptance; (2) consideration; (3) the terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) damages resulting from the breach. *Penzell v. Taylor,* 579 N.E.2d 956, 961 (Ill. App. Ct. 1991). For an enforceable contract to exist, the parties must have entered into an agreement which is sufficiently definite and certain so that the terms

10

are either determined or may be implied. *Magid Mfg. Co., Inc. v. U.S.D. Corp.*, 654 F. Supp. 325, 332 (N.D. Ill. 1987). When the material terms and conditions are not ascertainable no enforceable contract is created. *Id.*

Here, Plaintiff claims that the purported oral promise to give him 30% of the shares of KNCI occurred prior to August 15, 2014, when KNCI purchased Korea Times Chicago. *See, generally,* Dkt. 1, Pl.'s Complaint at Count V. Plaintiff, however, admitted that he never had any conversations with Huh (LR 56.1 Facts at ¶ 5) and that he had no communication of any kind, be it telephone, email or letter, that related to the purchase of Korea Times Chicago. (LR 56.1 Facts at ¶ 6.) Further, Plaintiff admitted that Huh never offered to give Plaintiff any shares of KNCI. (LR 56.1 Facts at ¶ 8.) It is axiomatic that some form of communications must have taken place in order for there to be an offer and acceptance, consideration, and agreement that is sufficiently definite and certain so as to ascertain the material terms of an oral contract.

Because Plaintiff essentially admitted that he has no claim for oral contract against Huh, he is entitled to summary judgment as a matter of law.

## V.     CONCLUSION

Accordingly, Defendant, Andrew Huh, respectfully requests that summary judgment be entered in his favor on all of Plaintiff's claims against him.

Respectfully submitted,

**ANDREW HUH**

By: /s/ Peter C. Kim

Peter C. Kim
Kearney Kilens
Victoria E. Vanderschaaf
LITCHFIELD CAVO LLP
303 W. Madison St., Suite 300
Chicago, Illinois 60606

11

Tel: (312) 781-6601
KimP@LitchfieldCavo.com

## **CERTIFICATE OF SERVICE**

I certify that on June 24, 2019, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Illinois by using the CM/ECF system, which will send a notice of electronic filing to the attorneys of record.

/s/ Peter C. Kim

Peter C. Kim
LITCHFIELD CAVO LLP
303 W. Madison St., Suite 300
Chicago, Illinois 60606
Tel: (312) 781-6601
KimP@LitchfieldCavo.com