**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN-KYU KIM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17-cv-01300 |
| v. ) | |
| ) | District Judge Hon. Thomas M. Durkin |
| THE KOREAN NEWS OF CHICAGO ) | |
| INC., an Illinois Corporation, ANDREW ) | |
| HUH, individually, SOOK Y. KIM, ) | |
| individually, and ROBERT B. KIM, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |

**THE KOREAN NEWS OF CHICAGO, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, The Korean News of Chicago, Inc. ("KNCI" or "Defendant"), through its undersigned attorneys, submits this Memorandum of Law in support of its Motion for Summary Judgment:

### I. INTRODUCTION

Plaintiff filed a four-(4) count complaint against KNCI asserting minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA" or "Act") (Counts I and II) and the Illinois Minimum Wage Law ("IMWL" or "Act") (Counts III and IV). KNCI hired Plaintiff as the president of the company from August 15, 2014 to February 4, 2015, where Plaintiff operated the entire business and managed the entire workforce. Plaintiff simply offers no proof beyond his own implausible conclusions and speculations that KNCI violated either the FLSA or IMWL. In fact, Plaintiff's own testimony directly contradicts the allegations of his complaint, which presents a major concern as to why this matter was ever filed in the first place. As a result,

KNCI is entitled to judgment as a matter of law, as no genuine issue of material facts exists and the court should enter summary judgment for KNCI on all counts.

## II. THE FAIR LABOR STANDARDS ACT AND ILLINOIS MINIMUM WAGE LAW

When analyzing minimum wage and overtime violations under the IMWL, courts simply need to review the FLSA regulations, because the Illinois Department of Labor essentially defers to the FLSA. *See Morgan v. SpeakEasy, LLC,* 625 F. Supp. 2d 632, 650 (N.D. Ill. 2007). The Illinois Department of Labor further acknowledges this in its regulations, where it provides for cooperation with the U.S. Department of Labor and to use various federal definitions in analyzing the IMWL. Ill. Admin. Code, Tit. 56 § 210.100, 210.120. Therefore, KNCI will analyze the executive exemption under the FLSA, which applies equally to Plaintiff's IMWL counts.

Congress enacted the FLSA on June 25, 1938. 52 Stat. 1060 (June 25, 1938) The Act established employers responsibilities when paying its employees who are "engaged in commerce," specifically requiring a federal minimum wage and a premium wage on hours worked over 40 in a workweek. The premium wage on hours worked over 40 in a workweek is time and a half of the employee's regular rate of pay. 52 Stat. 1060 (June 25, 1938). The minimum wage and overtime requirements were later codified at 29 U.S.C. §206 and §207. The Act also includes several exemptions to the minimum wage and overtime requirements, including and exemption for employees who work in "a bona fide executive, administrative, or professional capacity…." 52 Stat. 1067. This specific exemption is known as the "white collar exemptions" and is codified at 29 U.S.C. §213(a)(1). This "white collar exemption" provides that "[t]he provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to—any employee employed

in a bona fide executive, administrative, or professional capacity … (as such terms are defined and delimited from time to time by regulations of the Secretary …."). 29 U.S.C. §213 (a)(1) (2011). The Act is silent as to what constitutes "a bona fide executive, administrative, or professional capacity," leaving this task to the U.S. Department of Labor ("DOL"). 29 U.S.C. §213 (a)(1); See *Long Island Care at Home, Ltd. V. Coke*, 551 U.S. 158, 165, 127 S.Ct. 2339 (2007)(noting that the U.S. Department of Labor has the "power to fill gaps" through rules and regulations).

The DOL issued its first regulations regarding the "white collar exemptions" in October 1938 and embodied those regulations in 29 C.F.R. §541 et seq. Eventually, The DOL included a 4 part test in order for an employee to be exempt under the "white collar exemptions." 29 C.F.R. §541.100, §541.600, and §541.602. For purposes of this motion, Plaintiff was the president of KNCI and falls under the executive exemption. As such, for an employee to be exempt as an executive, the employee must meet the following part test:

> 1) Compensated on a salary basis at a rate of not less than $455 per week …
>
> 2) Whose primary duty is management of the enterprise in which the employee is employed or of customarily recognize department or subdivision thereof;
>
> 3) Who customarily and regularly directs the work of two or more other employees; and
>
> 4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. §541.100 (2011).

Further, on April 2, 2018 the U.S. Supreme Court held that the FLSA requires courts to use a fair reading of these exemptions and not a narrow review. *Encino Motorcars, LLC v.*

*Navarro*, *et al*, 584 U.S. ___, 138 S.Ct. 1134 (2018); also see *Flood v. Energy Mktg. Corp.*, 2018 WL 4471630, at *11 (2d Cir. Sept. 19, 2018). As a result, court opinions prior to April 2, 2018 analyzing the "white collar" exemptions should be reviewed carefully to assure that the court did not review the exemption narrowly.

### III.     FACTUAL BACKGROUND AND STATEMENT OF FACTS

KNCI purchased the newspaper Korean Times of Chicago on August 15, 2014, and began operating the newspaper on that date. (KNCI's LR 56.1 Stmt. of Facts at ¶ 3.) On August 15, 2014, Plaintiff moved to Chicago with his wife from New York to work for KNCI as its president. (KNCI's LR 56.1 Stmt. of Facts ¶5). KNCI paid Plaintiff a $2,000 monthly salary that was paid on a semimonthly schedule. (KNCI's LR 56.1 Stmt. of Facts at ¶¶ 24, 25) KNCI never reduced or altered Plaintiff's semimonthly salary during his employment. (KNCI's LR 56.1 Stmt. of Facts ¶26). Plaintiff was the head of, and in charge of, the newspaper editing and publication department and was responsible for the day-to-day operations of KNCI. (KNCI's LR 56.1 Stmt. of Facts ¶7) In his role as president and during the entirety of his employment with KNCI, Plaintiff always managed and supervised the work of at a minimum two or more employees. (LR 56.1 Stmt. of Facts ¶10). In fact, Plaintiff managed and supervised every person in the editing and publication department, which numbered around 10 employees. (KNCI's LR 56.1 Stmt. of Facts ¶10).

### IV.  SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *see also Mills v. Health Care Serv. Corp.*,

171 F.3d 450, 458 (7th Cir. 1999). A plaintiff opposing summary judgment must present admissible evidence showing a genuine issue of material fact; a scintilla of evidence, or evidence that is not significantly probative, is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A plaintiff "cannot rest on [her] own deposition, or self-serving affidavits, to meet [her] burden of proof," *Gilmour v. Abbott Labs.*, No. 03-C-9076, 2005 WL 947082, at *6 (N.D. Ill. Apr. 11, 2005).

## V. ARGUMENT

**A. PLAINTIFF MANAGED AND SUPERVISED AT LEAST 10 EMPLOYEES AS KNCI'S PRESIDENT, WHERE HE ALSO HIRED AND FIRED EMPLOYEES THROUGHOUT HIS TENURE. PLAINTIFF IS THERFORE EXEMPT FROM THE MINIMUM WAGE AND OVERTIME PROVISIONS.**

Plaintiff alleges that KNCI failed to pay him the minimum wage and overtime pay required under the FLSA and IMWL; however, Plaintiff was exempt from the minimum wage and overtime requirements under 29 U.S.C. §213(a). The Act provides specifically that sections 206 and 207 do not apply to an "employee employed in a bona fide executive, administrative, or professional capacity…." 29 U.S.C. § 213(a)(1); also see 820 IL Comp. Stat. 105/4a(2). Employees who work in a bona fide executive, administrative, or professional capacity with a company are known as "exempt" employees, meaning that the employer is not obligated to pay the employee a minimum wage or an overtime rate for hours worked over 40. Those requirements are embodied in 29 C.F.R. 541, *et seq*. and include a four part test.

Here, KNCI hired Plaintiff as the president and he meets the four-part executive exemption test, as follows:

> 1) KNCI compensated Plaintiff on a salary basis at a rate of not less than $455 per week, as he was paid a $1,000 semimonthly salary;

5

> 2) Plaintiff's primary duty was managing and operating KNCI;
>
> 3) Plaintiff customarily and regularly directed the work of at least two or more employees; and
>
> 4) Plaintiff, as president, had the authority and excised that authority by hiring and firing KNCI employees or at least his suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of employees was given a particular weight.

29 C.F.R. §541.100 (2011).

**1.     THE SALARY REQUIRMENT**

The first test under the executive exemption contains 2 parts related to Plaintiff's salary. The first part is the salary basis and the second part is the salary amount ($455 per week).

The salary basis part requires KNCI to pay Plaintiff a predetermined salary amount, regardless of the quality or quantity of work that he performed. 29 C.F.R. §541.602. This means that KNCI cannot reduce Plaintiff's predetermined salary amount "because of variations in the quality or quantity of Plaintiff's work. *Id*. *see also Kennedy v. Commonwealth Edison Co.,* C.A.7 (Ill) 2005, 410 F.3d 365. KNCI paid Plaintiff a monthly salary of $2,000. (KNCI's LR 56.1 Stat. ¶¶ 24-25). Plaintiff acknowledges in his complaint that he received a fixed salary regardless of the number of hours he worked for KNCI. (Dkt. #1 Complaint at Par. 77.) Therefore, if Plaintiff worked one hour each day or 10 hours each day, KNCI paid him the agreed upon $2,000 monthly salary. A review of Plaintiff's pay records establishes that KNCI paid the monthly $2,000 in a semimonthly schedule, which equals $1,000 salary during his entire employment. (KNCI's LR 56.1 Stmt. of Facts ¶ 26). In addition, if Plaintiff's work performance was below expectations, KNCI still paid him the semimonthly $1,000 salary, which again is established by a review of KNCI payroll records. (KNCI's LR 56.1 Stmt. of Facts ¶ 26). By

paying Plaintiff a predetermined $1,000 salary, regardless of the number of hours work or quality of work, KNCI meets the first part of the salary requirement.

The second part of the salary requirement requires KNCI to pay the Plaintiff "at a rate of not less than $455 per week…" or a semimonthly equivalent of $985.83. 29 C.F.R. §541.600 & §541.600(b). Here, KNCI paid Plaintiff a semimonthly salary of $1,000, which is greater than the $985.83 allowed under the regulations when paying on a semimonthly period. (KNCI's LR 56.1 Stmt. 24-25); also see 29 C.F.R. §541.600(b). As such, KNCI met the second part of the salary requirement, since the predetermined salary was greater than a semimonthly salary of $985.83, which is the equivalent to $455/per week. 29 C.F.R. §541.600(a) and (b). Therefore, no question of fact exists as it relates to the first test, as KNCI meets the salary requirements of the exemption.

**2.    JOB DUTY TEST**

The requirements 2 through 4 under the executive exemption are known as the job duties test, where Plaintiff must perform in order to be exempt. Element 2 provides that Plaintiff's "primary duty" must be in the "management of the enterprise in which the employee is employed." 29 C.F.R. §541.100. The "primary duty means the principal, main, major or most important duty that the employee performs, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. §541.700. The management of the enterprise consists of the following activities:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; … appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the

7

> employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.
>
> 29 C.F.R. §541.102

When KNCI hired Plaintiff as the president of the company, Mr. Robert Kim provided Plaintiff all of the authority to operate the business. (KNCI's 56.1 Stmt. of Facts ¶ 4). Here, Plaintiff's primary duty was managing and operating the entire company. As Plaintiff testified:

> **KNCI's Question:** What were your job duties as president of the Korean News of Chicago, Inc.?
>
> **Plaintiff's Answer**: I was head over all business, the actual, you know, reporting, writing the articles editing, So I oversaw all those areas. In addition, I held the meetings and managed and supervised the advertisement and business operation part as well.
>
> (KNCI's LR.56.1 Stmt. of Facts ¶ 11).

Plaintiff further specifically testified that his primary duty was managing the company:

> **KNCI Question** But your primary duty was managing the company, making sure revenue was growing, managing the employees. That was your primary duty, correct?
>
> **Plaintiff's Answer**: Yes.
>
> (KNCI's LR 56.1(b) Stmt. of Facts ¶ 11).

Based on Plaintiff's testimony, we have no question of fact that his "primary duty" was the management of KNCI, as Plaintiff testified that he "held the meetings and managed and supervised the advertisement and business operations." Mr. Dustin Lee further acknowledges that Plaintiff controlled the day-to-day operations starting in August 2014, where Plaintiff would

8

decide where articles were placed in the newspaper, hire and terminate employees, set work schedules, and handle all other operation issues. (KNCI's LR 56.1 Stmt. of Facts ¶ 9) In fact, Plaintiff was so controlling that he made the final decision on article placement and news stories, regardless of the editor-in-chief's suggestions. (KNCI's LR 56.1 Stmt. of Facts ¶ 27). Plaintiff also interviewed employees and made the decision to hire those individuals, as provided by Ms. Kim and Ms. Jang. (KNCI's 56.1 Stmt. of Facts ¶ 15). Plaintiff would also instruct employees on when to leave work and when to arrive. (KNCI"s LR Stmt. of Facts ¶ 17). Even Plaintiff admitted that that tracked employees' hours, issued warning to employees, and reviewed employees' work, which employed at KNCI. (KNCI's LR Stmt. of Facts ¶ 19-21). All of these duties fall within the "managing" portion of the regulations. The facts are undisputed that Plaintiff "managed" KNCI by operating the day-to-day activities, which included interviewing potential employees, controlling placement of articles and advertisements, setting employees' schedules, terminating employees, managed and supervised the business operations, and other operational duties; therefore, Plaintiff's primary duty was the management of the company, which he clearly performed.

Plaintiff also "customarily and regularly" directed the "work of two or more" employees, as well as, hired and fired several employees at KNCI. Plaintiff supervised at least two or more employees, as he testified that he supervised at least 10 employees, including, Mr. Dustin Lee, Ms. Christine Kim, and Ms. Mira Jang. (KNCI's LR 56.1 Stmt. of Facts ¶ 10). Mr. Lee also acknowledged that Plaintiff was his supervisor, where Plaintiff would direct Mr. Lee to place articles and stories in certain locations within the newspaper. (KNCI's LR 56.1 Stmt. of Facts ¶ 22). Ms. Mira Jang, a graphic designer, also understood that Plaintiff was in charge of all of the employees and supervised all of the employees working at KNCI. (KNCI's LR 56.1 Stmt. of

9

Facts ¶ 17). As a result, based on Plaintiff's testimony and other employees' confirmations, we have no question of fact that he customarily and regularly directed the work of at least two or more employees.

As president, Plaintiff had the authority to hire and fire employees during his time as president. (KNCI's LR 56.1 Stmt. of Facts ¶¶ 8, 9, 10, 12, 15). This is supported by Ms. Jang and Ms. Kim's affidavits, where they both acknowledged that Plaintiff not only interviewed them for their positions, but also hired them to work for KNCI. (KNCI's LR 56.1 Stmt. of Facts ¶ 15). In fact, Plaintiff actually recruited Ms. Christine Kim to work at KNCI, as Plaintiff contacted her and set up meetings to discuss her working at KNCI. (KNCI's LR 56.1 Stmt. of Facts ¶ 14). Although Plaintiff testified that he did not do hiring by himself, his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other charge of status of other employees are given particular "weight" is enough to meet the authority under the executive exemption, as Mr. Robert Kim testified, Plaintiff was provided full authority to operate the newspaper. (KNCI's LR 56.1 Stmt. of Facts ¶¶ 4, 8); 29 C.F.R. 541.100(4).

Plaintiff was the president of the KNCI and acted as the president of the company, by managing the entire enterprise, directing the work of at least two other workers, hired and fired employees to meet the executive exemption under the FLSA. Plaintiff's own testimony establishes that he meets executive exempt and no genuine issue of material fact exist on this issue. Therefore, this Court should grant KNCI's summary judgment motion and award KNCI any and all attorneys' fees and costs associated with defending this matter.

## VI. CONCLUSION

Accordingly, Defendant, The Korean News of Chicago, Inc., respectfully requests that summary judgment be entered in its favor on all of Plaintiff's claims.

Respectfully submitted,

**THE KOREAN NEWS OF CHICAGO, INC.**

By: /s/ Peter C. Kim

Peter C. Kim
Kearney Kilens
Victoria E. Vanderschaaf
LITCHFIELD CAVO LLP
303 W. Madison St., Suite 300
Chicago, Illinois 60606
Tel: (312) 781-6601
KimP@LitchfieldCavo.com

## **CERTIFICATE OF SERVICE**

I certify that on June 24, 2019, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Illinois by using the CM/ECF system, which will send a notice of electronic filing to the attorneys of record.

/s/ Peter C. Kim

Peter C. Kim
LITCHFIELD CAVO LLP
303 W. Madison St., Suite 300
Chicago, Illinois 60606
Tel: (312) 781-6601
KimP@LitchfieldCavo.com